PATRIC HOOPER (State Bar No. 57343)
E-Mail: phooper@hooperlundy.com
BRIDGET A. GORDON (State Bar No. 287098)
E-Mail: bgordon@hooperlundy.com
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067
Telephone: (310) 551-8111
Facsimile: (310) 551-0304

Attorneys for Plaintiff MYNDFULL CARE
MANAGEMENT CALIFORNIA, PC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYNDFULL CARE MANAGEMENT CALIFORNIA, a Professional Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>XAVIER BECERRA, Secretary of Health and Human Services,<br><br>Defendant. | Case No. **'24CV1623 DMS KSC**<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF UNDER THE MEDICARE PROGRAM**<br><br>Trial Date:   None Set |

Plaintiff MyndFull Care Management California, P.C. ("MyndFull") alleges as follows:

## INTRODUCTION

1.  Qlarant Integrity Solutions, LLC ("Qlarant") is a private company based in Maryland that contracts with the Secretary of Health and Human Services ("Secretary") to perform retroactive reviews of previously paid Medicare claims to determine whether services billed by health care providers, including doctors and nurse practitioners, and paid by Medicare are "reasonable and necessary" and that such providers meet "all other requirements for Medicare coverage." Qlarant is a Unified Program Integrity Contractor ("UPIC") whose authority is expressly

governed **and limited by** a specific Medicare statute, 42 U.S.C. § 1395ddd.

2. On July 15, 2024, Qlarant informed MyndFull that it had determined MyndFull "may be billing inappropriately for services . . . rendered to Medicare beneficiaries" from December 1, 2022, through February 27, 2024. *See* Exhibits A and B. While Qlarant actually reviewed only a small "sample" of such Medicare claims for this 15-month period – claims for which Medicare paid approximately $26,000.00 – Qlarant unilaterally chose to "extrapolate" its sample results to all claims paid during the period at issue resulting in a "final determination" of a total extrapolated overpayment of **$6,337,693.00.**

3. Qlarant's use of extrapolation is prohibited by the provisions of 42 U.S.C. § 1395ddd(f)(3), which expressly prohibit a Medicare contractor from using extrapolation to determine Medicare overpayment amounts "unless the **Secretary** determines" that there is a sustained or high level of payment error, or documented education intervention has failed to correct the payment error. The Secretary made no such determinations here. Instead, Qlarant did. Thus, the use of the extrapolated overpayment by Qlarant is *ultra vires* and must be voided and enjoined.

4. Qlarant's determination concerning the sampled claims is also flawed for various substantive reasons, which MyndFull is, and will continue to be, challenging through the lengthy, multi-level Medicare administrative appeal process. This process begins with reviews by other Medicare contractors, who are not authorized to stop Qlarant's unlawful use of extrapolation. Thus, unless enjoined by this Court, a Medicare contractor will seek recoupment of the total extrapolated (alleged) overpayment, which, in turn, will cause MyndFull, its Medicare patients and others irreparable harm. Indeed, Noridian Healthcare Solutions ("Noridian"), a Medicare contractor, has already recouped nearly $36,000.00 from MyndFull, which is approximately $10,000 more than the total amount of alleged overpayment **prior to** extrapolation.

2
COMPLAINT

## JURISDICTION

5. This Court may exercise jurisdiction to award injunctive relief under the provisions of 42 U.S.C. § 1395ff. Because MyndFull initiated the administrative appeal process on August 28, 2024 (Exhibit C) by challenging Qlarant's "final determination," it has satisfied the "presentment" requirement necessary for this Court to waive any requirement for the exhaustion of further administrative review with respect to the purely legal and collateral issue of whether Qlarant acted unlawfully when it chose to use extrapolation to determine the amount of the overpayment at issue. Additionally, federal question jurisdiction and mandamus jurisdiction exist under 28 U.S.C. §§ 1331 and 1361, respectively.

## THE PARTIES

6. MyndFull's professionals, including physicians and nurse practitioners, furnish neurofeedback services to persons suffering from serious mental illnesses, including cognitive disabilities, and traumatic brain injuries. It furnishes such services only after being requested to do so by the patients' (residents') attending physicians or psychiatrists. Among other diagnostic tools, MyndFull uses neuropsychological testing and Quantitative Electroencephalogram ("QEEG") "brain mapping" to obtain individual "baseline" measures for patients. MyndFull's professionals then perform neurofeedback therapy on an as-needed basis supported by an independent clinical assessment of the patient receiving therapy. MyndFull provides, among other things, a non-pharmacological approach to mental health through a gradual reduction in poly-pharmaceutical products, which decreases mental health emergency room treatment and mental health hospitalizations while improving the patients' quality of life. MyndFull is located in San Diego County and is duly enrolled in Medicare.

7. The Secretary administers the Medicare Program. He does so on a daily basis through the Centers for Medicare and Medicaid Services ("CMS"), a governmental subagency within the Department of Health and Human Services.

CMS, in turn, uses Medicare Administrative Contractors, such as UPICs, to perform various functions, including conducting reviews of Medicare providers' bills for services furnished to Medicare beneficiaries.

## THE RELEVANT MEDICARE PRINCIPLES

8. Medicare, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq., is the federal healthcare program for the aged and disabled. Part A of the program covers inpatient healthcare services furnished to Medicare beneficiaries through institutional providers such as hospitals and nursing homes. Part B of the Medicare Program is the Medicare supplementary medical insurance program. It covers services furnished by physicians and other health care professionals and ancillary medical products furnished by suppliers, including, for example, durable medical equipment suppliers. 42 U.S.C. § 1395j.

9. Congress has authorized the Secretary, through CMS, to contract with private entities to administer particular payment functions of the Medicare Part B program. 42 U.S.C. § 1395u. These Medicare Administrative Contractors ("MACs") are subject to the requirements of 42 U.S.C. § 1395kk-1. Under 42 U.S.C. § 1395ddd, the Secretary enters into separate contracts with other private contractors, such as UPICs like Qlarant. These Medicare Integrity Program contractors perform utilization and fraud and abuse reviews. Program integrity contractors often work together with the Office of Inspector General of the Department of Health and Human Services ("OIG"). For example, these contractors agree to provide the OIG with performance statistics (including the number and amount of overpayments recovered), which are used to determine "the return on investment" of their activities. 42 U.S.C. § 1395ddd(c)(4). Indeed, UPICs are eligible for "performance-based award fees" based on such statistics. *See* "UPICs Hold Promise to Enhance Program Integrity Across Medicare and Medicaid, But Challenges Remain," published by the OIG in September 2022, excerpted and attached as Exhibit D. And, under a CMS "guideline," Medicare Program Integrity Manual, section 8.2.1. (Exhibit E), "CMS

encourages contractors to report post-payment savings in terms of" extrapolated overpayments, which, in turn, will increase their "return on investment."

10. These program integrity contractors, including UPICs, are used by the Secretary to find and recover Medicare overpayments made to providers and suppliers pursuant to 42 U.S.C. § 1395ddd(f).  However, Congress has expressly prohibited them from using extrapolation to determine overpayments unless the "Secretary" determines that there is a sustained or high-level of payment error, or documented educational intervention has failed to correct the payment error.  In this matter, the decision to use extrapolation was made by the UPIC, Qlarant, and **not the Secretary**.  And, unfortunately, Qlarant has instructed the MAC for MyndFull to process the extrapolated amount for recovery.  Such recovery may occur following the second step of the administrative appeal process – the issuance of a reconsidered determination made by the qualified independent contractor ("QIC").  Such a decision occurs relatively early in the appeal process.

## THE FACTS

11. Qlarant "reopened" the MAC's decision to pay for the claims at issue on some undisclosed date based on some undisclosed reason.  *See* page 2 of the July 15, 2024 "final determinations" made by Qlarant.  Exhibits A and B.  Qlarant alleges that all of the claims had to be "reopened" and denied due to data that "showed [MyndFull] may be billing inappropriately for services . . . rendered to Medicare beneficiaries."  *Id.*  The findings largely involve a disagreement over the appropriate CPT codes to be used to reflect the services that were actually rendered and previously paid by the MAC for MyndFull.  While the July 15 notices reflect Qlarant's "final determination[s]," Qlarant informed MyndFull that a demand letter to repay the extrapolated amount will be issued by Qlarant's MAC, Noridian Healthcare Solutions ("Noridian").

12. On July 30, 2024, Noridian informed MyndFull that it was obligated to repay the entire amount of the extrapolated sum.  Exhibits F and G.  On August 28,

2024, MyndFull requested a redetermination of this decision pursuant to 42 U.S.C. § 1395ff.  Exhibit C (not including exhibits attached to Request for Redetermination due to volume).  Among the many issues raised, MyndFull challenged Qlarant's use of extrapolation on the grounds that the controlling Medicare statute, 42 U.S.C. § 1395ddd(f)(3), prohibited Qlarant from using extrapolation unless the Secretary made certain findings, which did not occur here.  Thus, MyndFull demanded that Qlarant reverse its demand based on its extrapolation and reduce the alleged overpayment to the sums found to have been overpaid for the claims actually reviewed by Qlarant.  Noridian does not have the authority to decide such legal issues as part of the redetermination process.  Nor do subsequent private party and government adjudicators have such authority, including the QIC, at the reconsideration level of Medicare appeal.

## THE INVALIDITY OF THE EXTRAPOLATION

13. Under 42 U.S.C. § 1395ddd(f)(3), Qlarant could only use extrapolation to determine a Medicare overpayment if the Secretary made one of the two required determinations described in paragraph 10.  Here, Qlarant and not the Secretary presumably made such a determination.  When providers/suppliers have raised this issue in the past, the Secretary has interpreted the controlling statute as permitting him to delegate such decision making to private contractors.  And, in the leading case on the issue, the Court of Appeals for the District of Columbia deferred to the Secretary's interpretation based on the *Chevron* doctrine.  *See Gentiva Healthcare Corporation v. Sebelius*, 723 F.3d 292, 295 (D.C. Cir. 2013), holding:

> First, we agree with the district court that review of the Secretary's construction of § 1395ddd(f)(3), as articulated in the Medicare Appeals Council proceeding, is governed by the standard of review enunciated in *Chevron. See AKM LLC v. Sec'y of Labor*, 675 F.3d 752, 754 (D.C. Cir. 2012) (noting that the *Chevron* standard applies, "even if the Secretary's interpretation arises in an administrative adjudication rather than in a formal rulemaking process" (citing *Martin v. OSHRC*, 499 U.S. 144, 157, 111 S. Ct. 1171, 113

L.Ed.2d 117 (1991))). Under that standard, we must defer to the Secretary's statutory interpretation "so long as the statute[ ] ... in question [is] ambiguous and the Secretary's interpretation[ ][is] reasonable." *Id.* In this case, the statute is not unambiguous and the Secretary's reading is not unreasonable. Hence**, although we believe Gentiva may have the better reading of § 1395ddd(f)(3),** we must defer to the Secretary. *See Allied Local and Reg'l Mfrs. Caucus v. EPA*, 215 F.3d 61, 71 (D.C. Cir. 2000) ("Under *Chevron,* we are bound to uphold agency interpretations as long as they are reasonable—'regardless whether there may be other reasonable, or even more reasonable, views.'" (quoting *Serono Lab., Inc. v. Shalala*, 158 F.3d 1313, 1321 (D.C. Cir. 1998)). Emphasis added.

14. On June 28, 2024, the United States Supreme Court jettisoned the *Chevron* deference doctrine in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). Thus, the federal courts no longer have to defer to an agency's "reasonable" interpretation of an ambiguous statute. Rather, the courts must determine the **better** interpretation. As recognized in the excerpted paragraph from *Gentiva*, quoted above, the **better** interpretation of Section 1395ddd(f)(3) is that the Secretary, and not a Medicare contractor, must make the determination that allows a contractor to use extrapolation to determine the amount of an alleged Medicare overpayment. Such an interpretation is also required by Article II and the due process clause of the Constitution, which prohibit Congress from delegating policy determinations to private contractors.

## THE RELIEF REQUESTED

15. Due to (a) the immediate and ongoing irreparable harm caused to MyndFull by the imminent recoupment of the extrapolated sum, and the Secretary's refusal to void the extrapolated sum and limit the recoupment to the amount of the overpayment determined based on the claims actually reviewed by Qlarant, (b) the likelihood that MyndFull will prevail on the dispute over the validity of the extrapolation used by Qlarant to determine the amount of the overpayment, and (c) the fact that the public interest favors the correct enforcement of the controlling

statutory provision, 42 U.S.C. § 1395ddd(f)(3), the Secretary and his agents, including Qlarant and MACs, must be temporarily and permanently enjoined from using the extrapolated sum at issue as the amount to be recouped from MyndFull.

16. Mandamus relief is also necessary and appropriate to enforce the mandatory provisions of the controlling statute and the constitutional requirements at issue.

## **PRAYER**

Wherefore MyndFull prays as follows:

1. For an order temporarily and permanently enjoining the Secretary and his agents, including CMS, Qlarant and MACs, from recouping or otherwise collecting the extrapolated sum at issue or any portion of it;

2. For an order mandating the Secretary to follow the applicable statutory and constitutional requirements;

3. For costs of suit, including reasonable attorneys' fees; and

4. For such other and further relief as the Court deems to be just and appropriate.

DATED: September 11, 2024          HOOPER, LUNDY & BOOKMAN, P.C.

By:      s/ Patric Hooper
                PATRIC HOOPER
                BRIDGET A. GORDON
        Attorneys for Plaintiff MYNDFULL CARE
        MANAGEMENT CALIFORNIA, PC

# INDEX OF EXHIBITS

| | Document | Page |
|---|---|---|
| A | Qlarant Notice of Extrapolated Overpayment dated July 15, 2024 | 10 |
| B | Qlarant Notice of Extrapolated Overpayment dated July 15, 2024 | 14 |
| C | MyndFull Request for Redetermination dated August 28, 2024 | 18 |
| D | OIG Publication excerpt entitled, "UPICs Hold Promise to Enhance Program Integrity Across Medicare and Medicaid, But Challenges Remain," September 2022 | 29 |
| E | CMS "guideline," Medicare Program Integrity Manual, section 8.2.1 | 31 |
| F | CMS Repayment Notice dated July 30, 2024 | 34 |
| G | CMS Repayment Notice dated July 30, 2024 | 41 |